IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-85-BO

LOGAN WILSON, et al., )
)
    Plaintiff, )
)
v. ) **O R D E R**
)
KELLY J. THOMAS, in his official capacity as )
the Comissioner of Motor Vehicles, North Carolina )
Department of Transportation, Division of Motor )
Vehicles, and ANTHONY TATA, in his official )
capacity as the Secretary of Transportation, North )
Carolina Department of Transportation, )
)
    Defendant. )

This matter is before the Court on defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). [DE 17]. A hearing was held on this matter in Raleigh North Carolina on August 5, 2014 at 3:00 p.m. For the reasons stated herein, defendants' motion to dismiss is DENIED.

## BACKGROUND

This action is brought by six individually named plaintiffs and an organization, Disability Rights North Carolina ("Disability Rights") and alleges claims under Title II of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the North Carolina Constitution. Disability Rights is a North Carolina non-profit organization that advocates on behalf of individuals with disabilities. Each individual plaintiff in this case holds a current, valid, North Carolina driver's license. Each individual plaintiff has various restrictions on their licenses pertaining to the various physical disabilities

and medical conditions they have. Plaintiffs allege that the North Carolina Division of Motor Vehicles ("DMV") requires plaintiffs to undergo repeated medical reviews in spite of medical evidence that these reviews are unnecessary, the DMV requires plaintiffs to take road tests when others are not required to do so and when there is no objective basis for doing so, the DMV imposes restrictions of plaintiffs' licenses that are unsupported by medical evidence, and that the DMV frequently acts outside of its statutory authority in taking these actions and violates federal laws requiring that purported "safety" measures must be "necessary . . . [and] based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 35.130(h).

Specifically, plaintiffs object to defendants' behavior including: requiring unwarranted road testing, medical reviews, and behind-the-wheel assessments; imposing arbitrary license restrictions on plaintiffs and other constituents of Disability Rights; relying on discriminatory policies contained in the Examiners Manual and the Physician's Guide; forcing plaintiffs to bear the cost and burden of additional testing; and the lack of administrative rules promulgated to govern defendants' administration of the North Carolina driver medical review program.

## DISCUSSION

I.      12(b)(1).

A motion pursuant to FED. R. CIV. P. 12(b)(1) is treated in a manner similar to a motion for summary judgment in that the question before the Court is whether there is a genuine issue of material fact as to the Court's jurisdiction. *Richmond, F. & P. R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The moving party should prevail on if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

2

Defendants argue that the individual plaintiffs have not established standing because they have not established the existence of a redressable injury. Similarly, defendants also argue that plaintiff Disability Rights does not have standing because it cannot show that it has suffered any injury.

    A.    Individual Plaintiffs' Standing.

Standing to invoke federal jurisdiction requires plaintiffs to show: (1) injury in fact; (2) a casual connection between the injury and the challenged actions of the defendant; and (3) that is more likely than speculative that a favorable decision would remedy the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561. When the plaintiffs themselves are the object of the challenged government action, "there is ordinarily little question that the action [] has caused [them] injury and that a judgment preventing [] the action will redress it." *Id.* at 561–62. "The standing doctrine [] depends not upon the merits, but on whether the plaintiff is the proper party to bring the suit." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460–61 (4th Cir. 2005) (citations and quotations omitted). At the pleading stage, an allegation of injury to the plaintiff resulting from the defendant's conduct meets the evidentiary burden of demonstrating standing to sue. *Id.* at 460.

Here, the individual plaintiffs allege that defendants discriminated against them based on their disabilities, and seek relief from the Court that, if granted, would redress the injuries they have experienced. Therefore, they have standing.

    B.    Disability Rights's Standing.

There are two types of organizational standing: associational standing, where the organization represents the interests of constituents who would otherwise have standing; and

3

organizational standing, where the organization itself has interests relating to the alleged wrong. *Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 343–47 (1977). Associational standing may be asserted by an organization where:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343. A non-membership organization has associational standing where it possesses the "indicia of membership." *Id.* at 344.

Here, the individual plaintiffs have standing as discussed *supra* Part I.A. Disability Rights seeks to protect interests that are germane to the organization's purpose. Because Disability Rights's primary function is to protect the rights of individuals with disabilities, its challenge to the defendants' allegedly discriminatory practices is germane to the organization's purpose. Disability Rights seeks the non-discriminatory administration of the driver licensing program to benefit all eligible constituents of Disability Rights and declaratory and injunctive relief furthering that goal. This is clearly relief that does not require the participation of any individuals. Finally, Disability Rights meets the last requirement for associational standing for a non-membership organization because it possesses the "indicia of membership." Disability Rights is a protection and advocacy organization whose characteristics are similar to the Washington State Apple Advertising Commission which the Supreme Court found to have associational standing in *Hunt*. 432 U.S. at 337, 344–45. Therefore the Court finds that Disability Rights has associational standing and it need not address Disability Rights's organizational standing.

Having resolved the threshold issue of standing in favor of plaintiffs, the Court now turns to defendants' motion to dismiss on 12(b)(6) grounds.

4

II.     12(b)(6).

A Rule 12(b)(6) motion challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

A.     Plaintiffs are Qualified Individuals with Disabilities.

Defendants argue that plaintiffs have failed to state a claim under the ADA and the Rehabilitation Act because plaintiffs are not qualified individuals with disabilities. In order to establish a claim under the ADA and Rehabilitation Act, plaintiffs must allege that he or she: (1) has a disability; (2) is otherwise qualified to participate in a public program or activity; and (3) was discriminated against based on disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). Defendants only argue that plaintiffs are not "otherwise qualified" individuals. "A plaintiff is 'qualified' if she is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets

5

the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)).

In order to obtain a North Carolina driver's license, an individual must complete an application, provide two forms of identification, be a resident of the State, and demonstrate the physical and mental ability to drive safely. N.C. Gen. Stat. § 20-7(b)(1). Here, each individual plaintiff has obtained and currently holds a valid North Carolina driver's license thus establishing that they meet the threshold requirements to obtain a license. The issue here is not, as defendants assert, a threshold issue of whether plaintiff's have demonstrated that they meet the "essential eligibility requirements" for a driver's license, because, by holding a valid driver's license, plaintiffs have already demonstrated this. Rather, the issue is whether the actions taken by the state, after the issuance of a driver's license, are discriminatory in nature. Defendants' argument that the DMV's actions here are merely a continual effort to ensure that plaintiffs are qualified to drive is misguided and attempts to read requirements for a driver's license into the statutory list that must be met *after* the individual has satisfactorily demonstrated the ability to drive and received a driver's license.

It is clear that, here, plaintiffs are qualified individuals. Each individual plaintiff holds a valid driver's license which means that each individual plaintiff is a qualified individual for the purposes of the driver's licensing program.

B. Federal Funding.

Defendants next argue that the Court should dismiss the second cause of action because plaintiffs have failed to state a plausible claim of discrimination by a public entity that receives federal funds for the issuance of driver's licenses. The Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability

6

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). "[t]he term 'program or activity' means *all of the operations* of . . . a department, agency, special purpose district, or other instrumentality of a State or local government . . . *any part of which* is extended Federal financial assistance." 29 U.S.C. § 794(b)(1) (emphasis added). An allegation that a particular department of state government or a state official in his or her official capacity receives federal financial assistance is sufficient to maintain a claim under the Rehabilitation Act. *Huber v. Howard Cnty.*, 849 F. Supp. 407, 415 (D. Md. 1993) (finding that the entire county fire department was a recipient when an office within the department received federal funds).

Here, plaintiffs allege that the North Carolina Department of Transportation and its Division of Motor Vehicles collectively receive federal financial assistance from the United States Department of Transportation. This allegation is sufficient to meet the pleading requirements to bring a claim under the Rehabilitation Act.

    C.    Due Process Claim.

Defendants' final argument in support of their motion to dismiss is that plaintiffs' had an adequate state remedy available to them and therefore cannot bring a claim under the North Carolina Constitution, their third cause of action. "[A] plaintiff whose rights under the North Carolina Constitution have been violated may pursue an action directly under the state constitution only if there is no other remedy under state law to redress the violation." *Love-Lane v. Martin*, 355 F.3d 766, 789 (4th Cir. 2004). If there is an available remedy under a North Carolina statute, a plaintiff is barred from pursuing state constitutional claims here. *Id.* Defendants argue that plaintiffs have and had the ability to seek administrative and judicial

7

review of any condition(s) of the driver's license issued the plaintiff which they contest under N.C. Gen. Stat. § 20-9(g).

However, 20-9(g) only allows individuals whose license has been denied to request a hearing before a DMV reviewing board, and subsequently, appeal the decision to the Office of Administrative Hearings. N.C. Gen. Stat. § 20-9(g)(4); *see also Craig v. Faulkner*, 565 S.E.2d 733, 735 (N.C. App. 2002) ("We agree with the DMV that N.C.G.S. § 20-9(g)(4), by its express language, applies only to the case where a license has been denied"). Here, none of the plaintiffs have been denied a North Carolina driver's license and they seek to challenge the DMV's orders that they obtain post-licensing physical examinations and behind-the-wheel assessments, complete post-licensing road tests, and drive with certain restrictions on their licenses. There does not appear to be any state law procedures that afford them a mechanism to challenge the DMV's orders. The only state law remedy available to the individual plaintiffs here is a direct claim against defendants under the North Carolina Constitution.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED. The matter may proceed in its entirety.

SO ORDERED.

This the _20_ day of August, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE